**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **RESINALL CORPORATION,** | : | No. 3-09-cv-1326(WWE) |
| Plaintiff, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **EMPLOYERS INSURANCE COMPANY** | : | |
| **OF WAUSAU,** | : | |
| Defendant. | : | |

## MEMORANDUM ON CROSS MOTIONS FOR SUMMARY JUDGMENT

In this action, plaintiff Resinall Insurance asserts that defendant Employers Insurance Company of Wausau is liable for breach of contract, breach of the covenant of good faith and fair dealing and violation of the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act.

Plaintiff moves for partial summary judgment, seeking judgment on its claim of breach of contract. Defendant moves for summary judgment on all of the claims asserted against it. For the following reasons, plaintiff's motion for partial summary judgment will be granted.

## BACKGROUND

Plaintiff and defendant have submitted statements of facts with supporting evidentiary materials. These submissions reveal the following undisputed facts.

Plaintiff is incorporated in the state of North Carolina and maintains its principal place of business in Stamford, Connecticut. Plaintiff is a manufacturer of hydrocarbon, rosin-based and specialty resins. It has production facilities in Severn, North Carolina; Hattiesburg, Mississippi; and Brugge, Belgium. Plaintiff has also maintained facilities in Virginia, Florida and Illinois.

Defendant is organized under the laws of Wisconsin and has its principal place of business in Wausau, Wisconsin.

From 2003 through 2008, plaintiff used two different brokers to procure workers' compensation insurance on plaintiff's behalf through Wausau. The initial Wausau policy was effective from March 9, 2003 through March 9, 2004. Subsequently, the Wausau policies procured for plaintiff were effective from March 9, 2004 through March 9, 2005; March 9, 2005 through March 9, 2006; and March 9, 2006 through March 9, 2007. At the end of each policy term, Wausau did not make any modifications to the relevant premium basis.

The Wausau policies provided workers' compensation coverage for plaintiff's operations in Connecticut, Florida, Illinois, North Carolina and Virginia.

The premium payments required under the terms of each policy were calculated according to various factors, including classifications that assigned different workplace exposures. With the exception of North Carolina, the states covered by the Wausau policies use a classification system devised and maintained by the National Council of Compensation Insurance ("NCCI"), an independent advisory organization. North Carolina maintains an independent rating bureau. However, NCCI publishes the manual for North Carolina workers' compensation ratings and North Carolina's independent rating bureau follows the NCCI guidelines.

The NCCI classification system is based on a system of approximately 600 classification codes that are used to rate workers' compensation insurance. Each code is assigned to a different type of workplace exposure.

Plaintiff paid the premiums dictated by Wausau. For the policies in effect from

March 9, 2003 through March 9, 2007, Class Code #1473 was listed as factor in determining the estimated premium. Class Code #1473 is entitled "Turpentine or Resin MFG. — Steam or Non-Destructive Process & Drivers." From 2003 through 2008, this Code was applied to describe the work done at plaintiff's facilities in Mississippi and North Carolina.

In 2008, plaintiff retained Essential Services & Programs, LLC ("Essential Services") to perform an audit on the workers' compensation insurance policies. Dennis Sturtz of Essential Services was asked to review the policies to determine if plaintiff's premium reflected the risks associated with its business.

On plaintiff's behalf, Sturtz initiated a proceeding with the NCCI to request an inspection of the classifications assigned to plaintiff's operation. NCCI conducted an investigation of plaintiff's production facilities in Mississippi and North Carolina. In March 2008, NCCI issued an Inspection and Classification Report regarding plaintiff's operations. It concluded that plaintiff's operations in Mississippi and North Carolina were better described by Class Code #4829 (Chemical Mfg., NOC—All Operations & Drivers——Include Blending & Mixing) rather than that the Class Code #1473. The NCCI report noted that there had not been a change to plaintiff's operations during the last four years that would have affected plaintiff's classification change. The NCCI report also states: "The information on this form is not a representation of coverage but is soley based on observation of operations visible on the date of inspection or audit."

As a result of the classification change, plaintiff's premium cost decreased. Defendant changed the premium code of the policy in effect during 2008 at the time of the NCCI report, but did not alter the codes retroactively with respect to the policies of

prior years.

Plaintiff now asserts that defendant owes it a refund on overpayments made on the policies issued between March 9, 2003 and March 9, 2007.

## **DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for it. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. See Patterson v.

4

County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Defendant argues that the policies are each separate and distinct contracts and that the 2008 policy in effect at the time of the classification change does not mandate that the change should affect the prior policies. Plaintiff counters that summary judgment is appropriate in its favor on the breach of contract claim because the plain language of the policies provides that defendant had an obligation to issue a refund on plaintiff's overpayment.

A policy of insurance is a contract, and each renewal of an original policy represents a separate and distinct contract. Kane v. American Ins. Co., 52 Conn. App. 497, 501 (1999). A contract of insurance must be viewed in its entirety, and the intent of the parties entering into it must be derived from the four corners of the policy. Socci v. Pasiak, 116 Conn. App. 685, 689 (2009). The Court should construe any ambiguity in the terms in favor of the insured. Auto Glass Exp., Inc. v. Hanover Ins. Co., 293 Conn. 218, 232 (2009). In determining whether the terms of an insurance policy are clear and unambiguous, a court must not torture words to create ambiguity where the ordinary meaning leaves no room for ambiguity; a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. National Grange Mutual Ins. Co. v. Santaniello, 290 Conn. 81, 89 (2009).

Plaintiff points to the following contractual language identical to each policy

5

issued from 2003 through 2007:

> Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

Plaintiff maintains that this provision recognizes that an initial premium estimate may not be accurate and that defendant would have to review and adjust the amount if it was not accurate. Plaintiff argues that the use of the future tense unambiguously indicates that the parties intended to impose an ongoing obligation beyond the policy term.

Plaintiff also relies upon the provision entitled "Final Premium" that is also consistent among the policies:

> The premium shown on the Information Page, schedule, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay the balance. If it is less, we will refund the balance to you.

Plaintiff asserts that contractual language expressly contemplates that a refund would be returned to plaintiff after the end of the policy if the premium basis was found to be inaccurate. In support of this position, plaintiff refers to Part Five, Section G relevant to defendant's right to audit that is contained within each policy contract:

> We may conduct the audits during regular business hours during the policy period and within three years after the

> policy period ends. Information developed by audit will be
> used to determine final premium. Insurance rate service
> organizations have the same rights we have under this
> provision.

Defendant argues that it has no refund obligation as to prior policies because the contractual language refers to "this policy," which is a distinct contract. In arguing that each policy represents a separate contract, defendant points to the section of the 2008 policy entitled "Long Term Policy," which provides:

> If the policy period is longer than one year and sixteen days,
> all provisions of this policy will apply as though a new policy
> were issued on each annual anniversary that this policy is in
> force.

Thus, defendant maintains that any contractual obligation imposed only applies during the period relevant to the each separate contract. However, the contract does contemplate the possibility of a change in the final premium based on information gathered from an audit conducted within three years after the end of a policy period. Thus, the plain language of the contract provides that a refund on the premium amount should be allowed based on information stemming from an audit within three years after the end of the policy. A refund on all but the initial Wausau policy is appropriate under the contract terms.

Although plaintiff's claim for a refund on the initial policy is within Connecticut's six-year statute of limitations, Connecticut General Statutes section 52-576, an insurer is within its rights to provide express contract language limiting plaintiff's time to seek a claim. See Voris v. Middlesex Mutual Assurance Co., 297 Conn. 589, 600 (2010). Accordingly, the Court will allow plaintiff to recover on the all but the initial policy. The Court will grant plaintiff's motion for partial summary judgment, and it will deny

defendant's motion for summary judgment.

## **CONCLUSION**

For the foregoing reasons, the plaintiff's motion for partial summary judgment [doc. #87] is GRANTED; and defendant's motion for summary judgment [doc. #53] is DENIED.


_____/s/_____
Warren W. Eginton
Senior United States District Judge


Dated this _18__ day of February, 2011 in Bridgeport, Connecticut.